JOSEPH FRENCH *versus* ABIEL MCALLISTER & *al.*

If, to authorize an arrest of the body under the poor debtor acts of 1835 and 1836, it be certified upon the writ that the creditor made oath, "*that the debtor was about to depart and establish his residence beyond the limits of this State, with property or means more than sufficient for his immediate support,*" it must be regarded as equivalent to an oath, that he was to take with him such property or means, in the language of the poor debtor acts.

If one of the conditions of a poor debtor's bond be, "*and further do and perform all that is required in and by the acts in such case made and provided,*" this imposes the condition that he should abide the order of the justices before whom he should make his disclosure.

Where the justices of the peace and of the quorum, before whom a debtor, having been arrested upon a writ, and having given bond, had made a disclosure after judgment was rendered in the suit, made their order on Jan. 4, 1839, that the debtor might go at large upon the bond until the creditor should make his election to levy his execution upon the body of the debtor, or upon the property disclosed; and where the creditor had within thirty days of that time given the execution to the same officer who had made the arrest, and the officer had made his return, dated Feb. 5, 1839, thirty-two days after the order of the justices was made, "*that he had notified the bail of the debtor upon the original writ to deliver up his body, the creditor having elected to take the same within thirty days next after Jan. 4, 1839, but they have neglected so to do,*" and that he could find neither the property nor the body of the debtor within his precinct; in a suit upon the bond, *it was held : —*

That if the creditor should within thirty days elect to take the body of the debtor, it should be forthcoming to be imprisoned :

That it is fairly deducible from the statutes that the election to take the body should be made within thirty days, although it may not be necessary to give notice to the sureties on the bond to produce the body of the principal within that time, if the execution remain in force :

That such bond is subject to chancery :

And that where no extenuating circumstances appear, the measure of damages would be the amount of the execution, interest, and costs.

EXCEPTIONS from the Eastern District Court, CHANDLER J. presiding.

Debt upon a bond given to the plaintiff by A. McAllister, as principal, and J. C. and T. McAllister, as sureties, dated June 6, 1838, with the condition, "that whereas the said Abiel was on said 6th day of June, arrested at the suit of said French by force of a writ of attachment bearing date the fifth day of June, 1838, returnable to the S. J. Court on the first Tuesday

of July, 1838, now if the said Abiel shall, within fifteen days after final judgment against him in that suit, notify the said French to attend to the making of such disclosure and the taking of the oath provided in and by the act for the relief of poor debtors, and further do and perform all that is required in and by the acts in such cases made and provided, then said bond is to be void."

The parties agreed to a statement of facts. The plaintiff made an affidavit on the writ, " that the principal debtor was about to depart and establish his residence beyond the limits of this State, with property or means more than sufficient for his immediate support," and Abiel McAllister was arrested thereon, and to procure his release therefrom, gave the bond in suit, as principal, with the other defendants as his sureties. Judgment was rendered in the action in favor of the plaintiff on Dec. 21, 1838, and execution issued thereon on the 26th of the same month.

On Dec. 26, 1838, Abiel McAllister served upon the plaintiff a notice to attend on Jan. 4, 1839, at a place stated, where he proposed to make "a disclosure of the actual state of his business affairs, and submit himself to examination under oath before two justices of the peace and quorum, in conformity with the bond given on his arrest on mesne process, that the said French might attend the making such disclosure and taking such oath as is provided in § 7 of an act supplementary to an act for the relief of poor debtors, passed April 2, 1836."

On Jan. 4, 1839, at the place stated in the notice, A. McAllister submitted himself to examination before two justices of the quorum, who proceeded to his examination; and upon his disclosure in writing, it appeared to them, that he was the owner of real and personal estate and choses in action, and on the same day, Jan. 4, 1839, they made the following adjudication : —

"Upon the foregoing disclosure, it is ordered by the justices before whom the same was made, that the said Abiel McAllister go at large upon the bond given at the time of his arrest, until the creditor shall make his election to levy his execution

French v. McAllister.

upon the body of said McAllister, or upon the property by him disclosed, as is provided in the eighth section of an act entitled an act supplementary to an act for the relief of poor debtors, passed April 2d, 1836. Within thirty days from that time, the plaintiff delivered his execution to a deputy sheriff of said county, the same officer who made the arrest upon the writ, with orders to arrest the body of Abiel McAllister.

The deputy sheriff made this return upon the execution : — "Waldo ss. Feb. 5, 1839. By virtue of the within precept, and in obedience to the orders of the within creditor, I have made diligent search for the property and body of the within named McAllister, but could find neither within my precinct; and I have notified the bail of said McAllister upon the original writ to deliver up his body, the creditor having elected to take the same within thirty days next after the fourth day of January last past, but they have neglected so to do.

"John W. Sherwood, deputy sheriff."

The judgment still remains unreversed, and the execution unsatisfied.

If upon the facts the plaintiff was not entitled to recover, he was to become nonsuit; but if he was entitled to recover, the defendants were to be defaulted, "and judgment was to be rendered for the plaintiff for the amount of the execution, interest and costs."

The District Judge was of opinion, that upon the facts agreed, the bond was forfeited and ordered the defendants to be defaulted, and the defendants filed exceptions.

*W. G. Crosby,* for the plaintiff.

*W. Kelly,* for the defendants.

The opinion of the Court was by

WESTON C. J. — The affirmation of the creditor, certified by the justice, is, that the principal debtor is about to depart and establish his residence beyond the limits of this State, with property or means more than sufficient for his immediate support. This must be regarded as equivalent to an affirma-

tion that he was to take with him such property or means, in the language of the statute.

The Statute of 1835, c. 195, § 7, provides, that if in the opinion of the justices, the debtor shall not have entitled himself to the benefit of the oath, he shall be committed to prison, unless the creditor shall within thirty days elect to levy his execution upon the property disclosed. By the statute of 1836, c. 245, § 8, the debtor is permitted to go at large, until the creditor shall have made his election, whether to take the body or the property, which by the former statute must be done within thirty days. But as he was not to be committed at the time of his disclosure, the statute of 1836, § 3, required that the bond should be upon the further condition, that he should submit to an examination, make disclosure under oath, and abide the order of the justices.

· The condition of the bond in question is, that the debtor should notify the creditor to attend to the making of the disclosure and the oath, and that he should further do and perform all that is required in and by the acts in such cases made and provided. This does by an intelligible reference to a public law, impose the condition, that the debtor should abide the order of the justices. Their order was, that he should go at large, until the creditor should make his election to take the body or the property. As his enlargement was to be only until the election was made, the necessary implication is, that if within thirty days he should elect to take the body, it should be forthcoming, to be taken and imprisoned. The statute of 1835, § 7, gives the creditor a lien upon the property disclosed, for the space of thirty days, but his right to the body of the debtor is not restricted to that period. If the enlargement of the debtor may be justified, until notified of the election of the creditor, neither of the statutes makes provision for such notice. We are aware therefore of no just reason why it might not be given after thirty days, if the execution remained in force. It is fairly deducible from the statutes, that the election should be made within thirty days. This the creditor did, and within that time put into the hands

of the proper officer his execution, with orders to take the body of the debtor.

The debtor, with the aid of his sureties, had obtained an indulgence. Its limits were fixed by law. They knew when the thirty days would expire. If they might remain passive, until called upon, and the officer had given them a further indulgence of two days, we find no authority for discharging them from the obligation of their bond. They should then have produced the body, that it might be taken and imprisoned under the execution.

By the return of the officer, under date of the fifth of February, 1839, it appears that he had made diligent search for the body of the debtor, without being able to find it, and that he had called upon the sureties to deliver it up, notifying them that the creditor had elected, within thirty days from the disclosure, to take the body, but that they neglected to comply with his demand. If this notice and demand is not to be referred to an earlier day, and was necessary to charge the defendants, we cannot say that it was too late. And upon a view of the whole case, it appears to us, that the plaintiff is entitled to recover.

The bond is subject to chancery, as was decided in *Wilson* v. *Gillis & al.* 15 Maine R. 55. But no facts are here agreed, from which it can be deduced that the creditor's damages should be reduced below the amount of his execution, interest, and costs. That was allowed as the measure of damages, in *Cordis & al.* v. *Sager & al.* 14 Maine R. 475, where no extenuating circumstances appeared.

*Exceptions overruled.*